1

2

3

4

5

6

7

8

9                     IN THE UNITED STATES DISTRICT COURT

10                    FOR THE EASTERN DISTRICT OF CALIFORNIA

11   SHERMAN JONES,

12              Plaintiff,                    No. 2:09-cv-2091 JFM (PC)

13        vs.

14   J.W. BAKER, et al.,

15              Defendants.

16   _____/          ORDER

17              Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42

18   U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

19   § 1915.  This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C.

20   § 636(b)(1).

21              Plaintiff has submitted a declaration that makes the showing required by 28

22   U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

23              Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28

24   U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee

25   in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

26   direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

                                      1

1   and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly

2   payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

3   account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court

4   each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28

5   U.S.C. § 1915(b)(2).

6          Plaintiff's complaint challenges two separate issues, which the court will address

7   seriatim.

8          1.  Unclothed Body Search

9          According to the complaint, the strip-search policy in place at California State

10  Prison-Sacramento (CSP-SAC) permits correctional officers to perform visual body-cavity

11  searches of male prisoners who report late to yard re-call.  Plaintiff alleges that on August 9,

12  2008, he and a fellow prisoner (Tarkington) were subjected to unclothed body searches before

13  being returned to their cells following access to the yard.  (Complt. at 4-5.)  Plaintiff states he did

14  not hear his "Section C" called, but before officers walked away from Section C, petitioner and

15  Tarkington approached officers to be patted-down.  (Id. at 4.)  The officers refused to pat them

16  down and told them to "wait."  (Id. at 5.)  The officers went to the next building about 20 feet

17  away and patted-down inmates waiting to return to that building.  (Id.)  Once the officers finished

18  with B-1 inmates, about ten officers and one female officer came over to petitioner and

19  Tarkington, surrounded them, and ordered them to "strip-down, naked, hand their clothes over

20  and squat down and cough."  (Id. at 5.)

21         Plaintiff contends five of the officers had "smiles and smirks" on their faces and

22  did not seem to be looking for weapons during the strip search.  (Complt. at 6.)  Plaintiff

23  contends he never left the area, and did not become a security concern by simply not hearing his

24  section called, and thus did not need to be strip-searched.  Plaintiff contends the unwritten policy

25  or practice is used as a form of punishment for being late returning to one's building after yard

26  recall.  Plaintiff states that the application of the unwritten strip-search policy at CSP-SAC to

2

1  require plaintiff to strip-down naked on an open yard was completely unnecessary and not a

2  security concern, and was humiliating and degrading.

3         The Fourth Amendment's protection against unreasonable searches extends to

4  incarcerated prisoners. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988) (citing Bell

5  v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979)).[1]  In determining the reasonableness of a

6  search under the Fourth Amendment "[c]ourts must consider the scope of the particular intrusion,

7  the manner in which it is conducted, the justification for initiating it, and the place in which it is

8  conducted." Bell, 441 U.S. at 559.  The reasonableness of a prisoner search is determined by

9  reference to the prison context. Michenfelder, 860 F.2d at 332.  "When a prison regulation

10  impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

11  legitimate penological interests." Turner v. Safley, 482 U.S. 78, 79, 107 S.Ct. 2254 (1987).

12         Prisoners' legitimate expectations of bodily privacy from persons of the opposite

13  sex are extremely limited. Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir.1993); see also

14  Michenfelder, 860 F.2d 328 (visual body-cavity searches of male inmates conducted within view

15  of female guards held constitutional); Grummet v. Rushen, 779 F.2d 491, 492 (high potential for

16  female guards to view male inmates disrobing, showering, and using toilet facilities did not

17  render prison policies unconstitutional); Rickman v. Avaniti, 854 F.2d 327, 327-28 (9th

18  Cir.1988) (routine visual body-cavity searches of prisoners held constitutional); Thompson v.

19  Souza, 111 F.3d 694, 700-01 (9th Cir. 1997) (visual body-cavity search of prisoners conducted in

20  public held constitutional).  Although visual body-cavity searches of male prisoners conducted

21  within view of female officers are generally permissible, abusive cross-gender visual cavity

22  searches may violate the Fourth Amendment's reasonableness standard. Somers v. Thurman, 109

23

24         [1]  In Bell, the Supreme Court assumed arguendo that prisoners retain some Fourth
    Amendment protection but did not decide the issue. Id.  Five years later, in Hudson v. Palmer,
    468 U.S. 517, 526, 104 S.Ct. 3194 (1984), the Court held that the Fourth Amendment does not
25  apply to searches of a prisoner's cell. Id.  "Notwithstanding the language of Hudson, [the Ninth
    Circuit]] has held that the Fourth Amendment . . . extends to incarcerated persons." Thompson
26  v. Souza, 111 F.3d 694, 699 (9th Cir.1997) (citations omitted).

1   F.3d 614, 622 n.5 (9th Cir.1997), cert. denied, 522 U.S. 852, 118 S.Ct. 143 (1997).  Further, "the

2   purposeful subjection of prisoners to verbal assaults during strip searches performed by officials

3   of the other sex serves no administrative purpose" and thus may be unreasonable.[2]  Id.

4          Plaintiff's complaint contains no allegations of physical abuse or touching by the

5   officers.  Plaintiff has provided copies of his administrative grievances that demonstrate the

6   unclothed body search was conducted in "a safe place to conduct the search under the coverage

7   of an elevated gun post."  (Complt., Exs. at 33 (First Level Review Response).)  Sgt. Baker stated

8   that the search was justified "in order to ensure no contraband was being introduced into the

9   housing unit."  (Id.)  The second level reviewer found that

10          inmates will routinely skip reporting to their housing unit to avoid
           being given an unclothed body search.  The institution found that
11         many inmates fail to report to their housing unit when called in
           order to transport contraband into the housing unit.  Therefore,
12         when any inmates are fails to report to his housing unit for
           processing, the institution has instituted a procedure that those
13         inmates are subjected to an unclothed search before they are
           permitted to re-enter their housing unit.  The conducting of
14         unclothed searches while somewhat embarrassing to the appellant
           are conducted professionally and in accordance with departmental
15         regulations.  The institution concluded that unclothed body
           searches of inmates who fail to report to their housing unit for
16         processing is consistent with CCR 3270 and 3387.

17  (Complt., Exs. at 25 (Director's Level Appeal Decision).)  The Director's Level Decision reflects

18  plaintiff's appeal was denied based on the following findings:

19          The documentation reveals that while the appellant may not have
           intentionally ignored the call to report to his housing unit for
20         processing, his failure to comply with the call required that he
           remain on the yard until all the other inmates were processed into
21         their housing units at which time an unclothed body search was
           conducted.  The institution implemented this policy in order to
22         prevent the introduction of contraband or other illicit material into
           any of the institution's housing units by inmates who intentionally

23

24          [2] Plaintiff alleges that several correctional officers who are not named as defendants in
    this action smiled and smirked at plaintiff during the body-cavity search.  Such conduct does not
25  rise to the level of abuse required to transform an otherwise permissible search into an
    unreasonable search.  See Somers, 109 F.3d at, 622 n.5 (pointing and laughing at nude inmates
26  during search insufficient to render search unreasonable).

1    failed to report for an unclothed body search prior to entering their
     housing unit.
2
     Pursuant to CCR 3287, an inmate is subject to an inspection of his
3    or her person, either clothed or unclothed, when there is a
     substantial reason to believe the inmate may have unauthorized or
4    dangerous items concealed on his or her person, that he or she may
     have been involved in an altercation of any kind.  The
5    documentation reveals that the implementation of this policy is
     consistent with CCR 3270 and 3287.  The appellant has not
6    provided convincing documentation that the unclothed body search
     conducted upon his person on August 9, 2008, was done
7    deliberately to embarrass him or for staff amusement.  Therefore,
     no modification of the decision reached by the institution in this
8    matter is warranted.

9    (Complt., Exs. at 25 (Director's Level Decision).)

10           Supervisory personnel are generally not liable under section 1983 for the actions

11   of their employees under a theory of respondeat superior and, therefore, when a named defendant

12   holds a supervisory position, the causal link between him and the claimed constitutional violation

13   must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir.1979); Mosher v.

14   Saalfeld, 589 F.2d 438, 441 (9th Cir.1978), cert. denied, 442 U.S. 941, 99 S.Ct. 2883 (1979).  A

15   prisoner may state a claim for relief against supervisory personnel under section 1983 by alleging

16   that the officials knew of the violations and failed to act to prevent them or "implemented a

17   policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the

18   moving force of the constitutional violation.' "  Hansen, 885 F.2d at 646 (internal citations

19   omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).

20           In the instant complaint, plaintiff has not named specific officers who engaged in

21   the unclothed body search, but appears to challenge the policy of strip-searching inmates who

22   report late for yard re-call.  Plaintiff alleges defendant J.W. Baker "was aware of the policy or

23   practice, agreed with it, witnessed it, and argued for it." (Complt. at 7.)  Plaintiff alleges that

24   Warden James Walker confirmed that the practice of strip-searches for being late from yard

25   recall was a fact and the current practice, and he supported Baker's arguments.  (Complt. at 8.)

26   /////

1    Plaintiff alleges N. Grannis, Chief of the Inmate Appeals Branch, "condoned the practice of strip-

2    searching an inmate on open yard for being late to yard recall.  (Complt. at 9.)

3                    Under minimal federal notice pleading standards, the court finds that plaintiff's

4    allegations are sufficient to allow him to proceed against defendants Baker and Walker for

5    violation of plaintiff's Fourth Amendment rights.  Fed.R.Civ.P. 8(a); Erickson v. Pardus, 551

6    U.S. 89, 127 S.Ct. 2197, 2200 (2007); Alvarez v. Hill, 518 F.3d 1152, 1157-58 (9th Cir.2008).

7                    However, rejecting an administrative complaint about a completed act of

8    misconduct does not expose a person to liability under section 1983.  George v. Smith, 507 F.3d

9    605, 609-10 (7th Cir.2007).  Accordingly, the complaint fails to state a claim for relief against

10   defendant Grannis for violating Plaintiff's Fourth Amendment rights.

11                   In his second claim, plaintiff contends that the installation of a timed toilet

12   flushing system violates his Eighth Amendment rights.  Plaintiff explains that the new flushing

13   system allows the toilet to be flushed only two times in a five minute period of time, but that if

14   an attempt to flush a third time is made, the entire system shuts down for one hour.

15                   The Eighth Amendment's prohibition against cruel and unusual
                     punishment imposes duties on prison officials to "provide humane
16               conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832,
                 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[P]rison officials must
17               ensure that inmates receive adequate food, clothing, shelter, and
                 medical care." Id.
18
                     Establishing a violation of the Eighth Amendment requires a
19               two-part showing. First, an inmate must objectively show that he
                 was deprived of something "sufficiently serious." Farmer, 511 U.S.
20               at 834, 114 S.Ct. 1970. A deprivation is sufficiently serious when
                 the prison official's act or omission results "in the denial of 'the
21               minimal civilized measure of life's necessities.' " Id. (quoting
                 Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69
22               L.Ed.2d 59 (1981)). The inmate must then make a subjective
                 showing that the deprivation occurred with deliberate indifference
23               to the inmate's health or safety. Id. (citing Wilson v. Seiter, 501
                 U.S. 294, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).
24

25   Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009).  It is settled that "subjection of a prisoner

26   to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the

1  meaning of the Eighth Amendment." <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1314 (9th Cir.

2  1995).  Imposition of sanitary limitations that are no more than temporary, however, do not run

3  afoul of the Eighth Amendment.  <u>Id</u>. at 1315.

4        In the instant case, the allegations of plaintiff's complaint show that the toilets are

5  only shut off if they are flushed more than twice in a five minute period, and then only for a one

6  hour period.  Any sanitary limitation caused by operation of such a timer is at most temporary.

7  Plaintiff's allegations do not demonstrate a deprivation that is sufficiently serious to violate the

8  Eighth Amendment.  For that reason, this court finds that plaintiff has failed to state a cognizable

9  claim for relief under the Eighth Amendment, and the court will not order service of process on

10  defendants named in connection with plaintiff's second claim.

11        As to plaintiff's first claim, however, the complaint states a cognizable claim for

12  relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b) as to defendants Baker and

13  Walker.  If the allegations of the complaint are proven, plaintiff has a reasonable opportunity to

14  prevail on the merits of his first claim against defendants Baker and Walker.

15        In accordance with the above, IT IS HEREBY ORDERED that:

16        1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

17        2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.

18  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

19  § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

20  Director of the California Department of Corrections and Rehabilitation filed concurrently

21  herewith.

22        3.  Service is appropriate for the following defendants:  Baker and Walker.

23        4.  The Clerk of the Court shall send plaintiff two USM-285 forms, one summons,

24  an instruction sheet and a copy of the complaint filed July 29, 2009.

25        5.  Within thirty days from the date of this order, plaintiff shall complete the

26  attached Notice of Submission of Documents and submit the following documents to the court:

7

1        a.  The completed Notice of Submission of Documents;

2        b.  One completed summons;

3        c.  One completed USM-285 form for each defendant listed in number 3

4            above; and

5        d.  Three copies of the endorsed complaint filed July 29, 2009.

6        6.  Plaintiff need not attempt service on defendants and need not request waiver of

7   service.  Upon receipt of the above-described documents, the court will direct the United States

8   Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4

9   without payment of costs.

10  DATED:  November 11, 2009.

11

12                          _____
                            UNITED STATES MAGISTRATE JUDGE
13

14  /001; jone2091.1

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHERMAN JONES,

11          Plaintiff,                    No. 2:09-cv-2091 JFM (PC)

12      vs.

13   J.W. BAKER, et al.,                  NOTICE OF SUBMISSION

14          Defendants.                   OF DOCUMENTS

15   _____/

16          Plaintiff hereby submits the following documents in compliance with the court's

17   order filed _____:

18          _____          completed summons form

19          _____          completed USM-285 forms

20          _____          copies of the _____
                                         Complaint/Amended Complaint
21   DATED:

22

23                                      _____
                                         Plaintiff
24

25

26