IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHERMAN JONES,

      Plaintiff,                  No. 2:09-cv-2091 JFM (PC)

   vs.

J.W. BAKER, et al.,

      Defendants.         ORDER

                           /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that his rights under the Fourth and Eighth Amendments have been violated by a policy at California State Prison, Sacramento of conducting a strip-search on inmates who are tardy in returning to their building following yard access. This matter is before the court on defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

A.    Procedural Background

        On July 29, 2009, plaintiff filed a complaint. On November 23, 2009, plaintiff filed a first amended complaint ("FAC"). Plaintiff seeks damages in the amount of $15,350.00.

        On March 17, 2010, defendants Correctional Sergeant J.W. Baker and Warden James Walker filed a motion to dismiss. On March 29, 2010, plaintiff filed an opposition. On April 6, 2010, defendants filed a reply.

1

B.     Factual Allegations

On August 9, 2008, plaintiff alleges that he and a fellow inmate, who is not a party to this suit, were involved in a legal conversation and did not hear prison officers call their building number during yard recall. (Compl. at 4.) Slightly tardy, plaintiff approached the line officers who were conducting pat-downs of other inmates housed in their building and told to wait. (Id.) After the officers finished the pat-downs, plaintiff claims ten officers, including one female officer, surrounded plaintiff and his fellow inmate on the open yard and ordered them to strip naked, hand over their clothes, squat down and cough. (Id. at 5.) Plaintiff complied with the strip-down. (Id. at 6.) He claims that the officers had "smiles [and] smirks" and "did not seem to be looking for weapons." (Id.) Plaintiff describes the incident as "humiliating, "degrading" and "unnecessary" as he was only slightly late for yard recall and showed no security concern to warrant the strip-down. (Id. at 6-7.)

Following the incident, plaintiff filed a grievance with the prison. (See Compl., Ex. A.) At the first level of review, defendant Baker informed plaintiff that he has "witnessed these unclothed body searches for inmates" and found that they "in no way humiliated or embarrassed the inmates involved." (Id.) He further stated that although plaintiff's situation may have been "a genuine mistake," "[i]t is difficult for staff to determine which inmates are telling the truth and which inmates are attempting to circumvent the rules." (Id.) At the second level of review, defendant Walker found that plaintiff was not "personally singled out for an unclothed body search but because of [his] late return from yard recall [he] was subjected to one based on the current practice of conducting unclothed body searches on all late returns." (Id.) Finally, at the Director's Level, it was found that a strip-down search of an inmate is a prison policy "to prevent the introduction of contraband or other illicit material into any of the institution's housing units by inmates who intentionally failed to report for an unclothed body search prior to entering their housing unit." (Id.)

/////

2

C.      Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. 89, 27 S.Ct. at 2200 (quoting Bell, 550 U.S. at 555, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

D.      Defendants' Motion

Defendants argue that plaintiff's FAC should be dismissed because the exhibits attached to it demonstrate that there was a legitimate penological purpose underlying the strip search.

As the Supreme Court has recognized, strip searches certainly "invade the personal privacy of inmates" and so "must be conducted in a reasonable manner." Bell v. Wolfish, 441 U.S. 520, 560 (1979). However, "so long as a prisoner is presented with the opportunity to obtain contraband and a weapon while outside of his cell, a visual strip search has a legitimate penological purpose ." Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988) (sentenced inmates); Davis v. Peters, 566 F.Supp.2d 790, 815 (N.D. Ill. 2008) (SVP inmates). Moreover, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Bell, 441 U.S. at 540 n.23 (internal quotes omitted). This court must

3

analyze the searches under both substantive due process and Fourth Amendment standards. Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205 (9th Cir. 2009).

Defendants assert that the policy of strip-searching inmates serves a legitimate penological purpose of preventing the introduction of contraband into the prison. A penological purpose, alone, however, is insufficient to prove that a strip search policy is reasonable. See, e.g., Lopez v. Youngbnlood, 609 F.Supp.2d 1125 (E.D. Cal. 2009). As Bell recognized, a court must determine whether a search is "reasonable" within the meaning of the Fourth Amendment by considering four factors: (1) the scope of the intrusion, (2) the manner in which it is carried out, (3) the justification for the search, and (4) the place in which it is undertaken. Bell, 441 U.S. at 559. While the court must consider whether the strip searches are related to a legitimate penological objective, that is not the end of the inquiry. See Byrd, 565 F.3d at 1221.

In their reply, defendants argue for the first time that plaintiff's FAC should be dismissed because there is no evidence that they were personally involved in strip-searching plaintiff and there is no *respondeat superior* liability in section 1983 claims. Generally, the court cannot grant a motion to dismiss on a new argument presented for the first time in a reply brief. See Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1176 & n.4 (9th Cir. 1995) (issues not raised in opening brief may not properly be raised in reply); In re Lal, 2002 WL 449661 *3 (N.D. Cal. Mar 15, 2002) (advancing new arguments in reply brief is improper); United States v. Boyce, 148 F.Supp.2d 1069, 1085 (S.D. Cal. 2001) (finding it improper for party to raise new argument in reply brief).

Nevertheless, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

1         While there is no *respondeat superior* liability under section 1983, liability can arise if the defendant personally participated in the violation in some way. Ybarra v. Reno Thunderbird Mobile Home Vill., 723 F.2d 675, 680 (9th Cir. 1984) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)); Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). To establish a prima facie case of supervisory liability, a plaintiff must show facts to indicate that the supervisory defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see also Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable).

         Plaintiff contends that the de facto purpose of the strip search policy is to "punish, humiliate and embarrass" inmates. He then refers to the strip search conducted on August 9, 2008 as an instance of its unconstitutional application. Plaintiff asserts there was no reason to suspect that he constituted a security concern; the strip search was conducted in front of a female officer; it was conducted on open yard; and, lastly, approximately five of the officers had "smiles [and] smirks" and "did not seem to be looking for weapons."

         In the FAC, plaintiff argues that defendant Baker was aware of the strip-down policy, "agreed with it, witnessed it and argued for it." (Id. at 7.) Plaintiff also contends that defendant Walker "confirmed that the practice of strip-searches for being late from yard-recall was a fact – and the 'current practice.'" (Id. at 8.) Nonetheless, the crux of plaintiff's argument is not that the strip search policy exists, but that the defendants were aware of and condoned the "alleged violations by subordinates" who "abuse[d] their authority" by strip searching prisoners even when they did not constitute a security concern and under circumstances that were intended to "humiliate" and "punish" inmates. Thus, to the extent plaintiff is challenging a de facto policy

5

of "punish[ing]" or "humiliat[ing]" inmates by strip searching them, plaintiff has failed to state sufficient facts.  He has only alleged that these defendants were aware of the policy of strip searches, not its allegedly unconstitutional application.  Therefore, plaintiff's FAC must be dismissed.  Plaintiff, however, will be given an opportunity to amend.

If plaintiff chooses to amend the complaint, plaintiff must identify individual defendants whose actions have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' March 17, 2010 motion to dismiss be denied;

2. Plaintiff's FAC is dismissed; and

3. Plaintiff be granted thirty days from the date of service of this order to file an amended complaint, should he choose to do so, that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended

1  complaint must bear the docket number assigned this case and must be labeled "Second
2  Amended Complaint"; plaintiff must file an original and two copies of the amended complaint;
3  failure to file an amended complaint in accordance with this order will result in a
4  recommendation that this action be dismissed.
5  DATED: May 13, 2010.

                UNITED STATES MAGISTRATE JUDGE

/014;jone2091.57