1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHERMAN JONES,

11             Plaintiff,                    No. 2:09-cv-2091 JFM (PC)

12        vs.

13   J.W. BAKER, et al.,                     ORDER AND

14             Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Plaintiff is presently housed at Salinas Valley State Prison in Soledad,

18   California.  Before the court is defendants' motion to dismiss.  Plaintiff opposes the motion.

19                              FACTUAL BACKGROUND

20        This action is proceeding on plaintiff's second amended complaint ("SAC")

21   against defendants Baker and Walker, filed July 19, 2010.[1]  Therein, plaintiff contends that whiel

22   he was housed at California State Prison – Sacramento ("CSP-Sacramento") on August 9, 2008,

23   he and a fellow inmate, who is not a party to this suit, were conversing and did not hear prison

24

25        [1] Plaintiff also named ten Doe defendants as parties in the SAC.  Plaintiff was informed
     by order on October 5, 2010 that he was to identify the Doe defendants within sixty days of that
26   order.  Because plaintiff has yet to identify those defendants, all Doe defendants shall be
     dismissed from this action.

officers call their building number during yard recall.  SAC at 5.  Slightly tardy to recall and yet in plain view of prison staff, plaintiff approached the line officers who were conducting pat-downs of other inmates housed in their building and was told to wait.  Id. at 5-6.  After the officers finished the pat-downs, plaintiff claims ten officers, including one female officer, surrounded plaintiff and his fellow inmate on the open yard and ordered them to strip naked, hand over their clothes, squat down and cough.  Id. at 6-7.  Plaintiff complied with the strip-down.  Id. at 7.  He claims that the officers had "smirks and smiles" and "did not seem to be looking for weapons."  Id.  Plaintiff describes the incident as "humiliating, "improper" and "unnecessary" as he was only slightly late for yard recall and showed no security concern to warrant the strip-down.  Id.

Following the incident, plaintiff filed a grievance with the prison.[2]  See SAC, Ex. A.  At the first level of review, defendant Baker stated that he was aware of strip searches of inmates tardy to yard recall and informed plaintiff that such searches comply with California Department of Corrections and Rehabilitations ("CDCR") regulations "to maintain the safety [and] security of the institution."  Id. at 7.  He further stated that he had "witnessed these unclothed body searches for inmates" and found that they "in no way humiliated or embarrassed the inmates involved."  Id. at 6-7.  Continuing, Baker stated that although plaintiff's situation may have been "a genuine mistake," "[i]t is difficult for staff to determine which inmates are telling the truth and which inmates are attempting to circumvent the rules."  Id.

/////

---

[2]  California's Department of Corrections and Rehabilitation provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally."  Cal. Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c).  If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. Id. § 3084.5(e)(1)-(2).

1    At the second level of review, defendant Walker referred plaintiff to the relevant

2    section of the California Code of Regulations, Title 15 that authorizes body inspections.  SAC,

3    Ex. A at 10-11.  He then noted the "common practice" of strip searching tardy inmates and

4    determined that plaintiff was not "personally singled out for an unclothed body search but

5    because of [his] late return from yard recall [he] was subjected to one based on the current

6    practice of conducting unclothed body searches on all late returns."  Id. at 10-11.

7    Finally, at the Director's Level, it was found that a strip-down search of an inmate

8    is a prison policy "to prevent the introduction of contraband or other illicit material into any of

9    the institution's housing units by inmates who intentionally failed to report for an unclothed

10   body search prior to entering their housing unit."  SAC, Ex. A at 1-2.

11                              PROCEDURAL BACKGROUND

12   This action was initiated on July 29, 2009.  In the original complaint, plaintiff

13   challenged the unclothed body searches of inmates tardy to yard recall as violative of his Fourth

14   Amendment rights and contended that the installation of a timed toilet system violated his Eighth

15   Amendment rights.  Upon screening the complaint, the undersigned found that plaintiff met the

16   minimal pleadings requirements of Rule 8 of the Federal Rule of Civil Procedure as to the

17   former claim and further found that the latter claim failed to state a claim.  See Doc. No. 5.

18   On November 23, 2009, plaintiff filed a first amended complaint challenging the

19   misuse of the strip search policy to humiliate prisoners and named only Baker and Walker as

20   defendants.  The first amended complaint was dismissed with leave to amend for plaintiff's

21   failure to allege that the defendants were aware of the misuse of the strip search policy.

22   On July 19, 2010, plaintiff filed the operative SAC against Baker, Walker and ten

23   Doe defendants.  On February 7, 2011, Baker and Walker filed a motion to dismiss.  On

24   February 18, 2011, plaintiff filed an opposition.  On March 28, 2011, defendants filed a reply.

25   /////

26   /////

3

STANDARDS FOR A MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. 89, 127 S.Ct. at 2200 (quoting Bell Atlantic at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Although the court previously issued a screening order that expressly stated that plaintiff stated a cognizable claim against defendant, the court finds that this finding does not foreclose defendant's right to bring a motion to dismiss on the same grounds. See Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (finding that the screening and dismissal procedure under the Prison Litigation Reform Act "is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring"). The court will consider the merits of defendant's motion to dismiss.

On December 11, 2009, plaintiff received the notice required by Wyatt v. Terhune, 305 F.3d 1033 (9th Cir. 2002), for opposing a motion to dismiss for failure to exhaust administrative remedies pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

/////

/////

/////

4

DISCUSSION

Defendants seek dismissal on the ground that plaintiff fails to allege sufficient facts demonstrating that they were aware of the misuse of the strip search policy.  Alternatively, defendants assert qualified immunity.

A.      Strip Search Policy

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails.  Bull v. San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc).  To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests.  See Bull, 595 F.3d at 973.  Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner.  See Bell v. Wolfish, 441 U.S. 520, 561 (1979).  The Fourth Amendment right to be secure against unreasonable searches extends to incarcerated prisoners, but the reasonableness of a particular search must be determined by reference to the prison context.  See Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  A cross-gender strip search may violate the Fourth Amendment.  See Byrd v. Maricopa County Sheriff's Dept., 629 F.3d 1135, 1141 (9th Cir. 2011).

Here, the SAC was initially filed against Baker, Walker and ten Doe defendants.  Plaintiff's allegation that the ten Doe defendants misused the strip search policy to humiliate him fails because, as discussed supra, the Doe defendants are dismissed from this action due to plaintiff's failure to identify them within a reasonable period of time.[3]

/////

---

[3] Plaintiff asserts in his opposition to defendants' motion to dismiss that he was unable to see the names of the officers on their name tags after the strip search was conducted and was thereby prevented from naming them in this action.  See Opp'n at 4.  Plaintiff, however, has had over one year since the filing of this action to identify the Doe defendants through other means and has given no indication that his attempts to identify the Doe defendants have been thwarted by CDCR.

1          Plaintiff's allegations against the remaining defendants, Baker and Walker,

2   similarly fail.  Those allegations are premised upon a theory of respondeat superior.  See SAC at

3   9-10.  To be clear, plaintiff does not challenge the strip search policy in toto, but instead argues

4   that staff at CSP-Sacramento misuse the policy to humiliate prisoners.  Plaintiff contends that the

5   remaining defendants in this action were both aware of and condoned the misuse of this policy.

6          Supervisory personnel are generally not liable under section 1983 for the actions

7   of their employees under this theory and, therefore, when a named defendant holds a

8   supervisorial position, the causal link between him and the claimed constitutional violation must

9   be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

10   Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and

11   conclusory allegations concerning the involvement of official personnel in civil rights violations

12   are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

13          Plaintiff's allegation that these defendants' responses to his grievance evidences

14   their awareness of the misuse of the strip search policy is unsupported.  The defendants'

15   responses to plaintiff's grievance demonstrate only that they were aware of the practice of strip

16   searching inmates tardy to yard recall.  Contrary to plaintiff's assertion, neither defendant stated

17   or even implied that he was aware of a misuse of the policy to humiliate tardy inmates.  Insofar

18   as the strip search of plaintiff was in fact an attempt by the ten Doe defendants to humiliate

19   plaintiff, plaintiff has failed to demonstrate how defendants Baker and Walker were the causal

20   link.  See Fayle, 607 F.2d at 862.

21          Accordingly, defendants' motion to dismiss should be granted as to this ground.

22   As this is the court's second recommendation to dismiss for failure to state a claim against Baker

23   and Walker, it is clear from plaintiff's latest attempt that further amendments would be futile.

24   Consequently, there is no need for the court to prolong this litigation by permitting further

25   amendment.  See, e.g., Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002).

26   /////

B.      Qualified Immunity

        Because the undersigned finds that plaintiff fails to state a claim against these defendants, it need not address defendants' alternate ground for dismissal.

        Accordingly, IT IS HEREBY ORDERED that a district judge be assigned to this matter; and

        IT IS HEREBY RECOMMENDED that

        1.  Defendants' motion to dismiss be granted; and

        2.  This action be dismissed without leave to amend.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 19, 2011.


_____
UNITED STATES MAGISTRATE JUDGE


/014;jone2091.mtd